UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 11-61936-Civ-Jordan/Brown

MARK S. MAIS,
on behalf of himself and
all others similarly situated,

      Plaintiff,

v.

GULF COAST COLLECTION BUREAU, INC., and
JACK W. BROWN, III,

      Defendants.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR JUDGMENT ON THE PLEADINGS

      Plaintiff, Mark S. Mais, files this Response in Opposition to Defendants' Joint Motion for Judgment on the Pleadings (DE 8) and, in support thereof, states as follows:

      1.    Defendants' motion should be denied as premature, as a motion for judgment on the pleadings may only be entertained once the pleadings are closed, and Defendants have not yet answered, thus, the pleadings are not yet closed, however, in an abundance of caution, in the event that the Court does not deny the motion as premature, Plaintiff will respond to the substantive allegations of Defendants' motion.

      2.    Defendants' argument is predicated upon the validity and applicability of a certain FCC Order, which relaxes the statutory requirements imposed by Congress. Congress has held that in order for a consumer to consent to automated calls, his consent must be "express." The FCC has issued an Order which turns the statute on its head, and holds that merely providing the phone number to a creditor acts as "express" consent.

1

Plaintiff does not agree that the FCC Order is valid, but even if it is, Plaintiff's secondary argument is that the FCC Order holds that if a consumer provides his cellular number to a creditor, absent other instructions, then that provision acts as a consent to automated calls. As explained below, Plaintiff contends that the federal privacy protections governing medical information acts as the "other instruction" that prohibits his cellular number from even being disclosed for the purposes of debt collection, and thus, he has not consented to automated calls.

### THE FCC EXCEEDED ITS CONGRESSIONAL AUTHORITY IN ISSUING AN ORDER ON CONSENT AND THE ORDER MANIFESTLY CONTRADICTS THE STATUTE AND IS THUS UNENFORCEABLE

3.      Congress provided that the FCC would prescribe regulations to implement the requirements of the TCPA. Subsection (b)(2) provides that in prescribing regulations, the Commission: A) shall consider prescribing regulations to ensure that businesses do not receive automated calls to which they have not consented; B) may exempt from section (1)(B) calls that are not made for a commercial purpose; C) may exempt from section (1)(A)(iii) calls to a cellular telephone number that are not charged to the called party; D) shall provide that a notice contained in an unsolicited advertisement complies with certain requirements under circumstances listed in that subsection; E) shall provide that a request not to send future unsolicited advertisements to a fax machine complies with certain requirements under circumstances listed in that subsection; F) may allow professional associations and nonprofit organizations to send unsolicited advertisements under circumstances listed in that subsection; G) may limit the duration of the existence of an established business relationship. 47 U.S.C. § 227(b)(2).

4.      Congress gave the FCC authority to exempt certain kinds of telephone calls and faxes. Congress did *not* give the FCC authority to amend the statute or alter the statute's *consent* provisions, and under the analysis found in <u>Chevron, U.S.A., Inc. v. National Resources Defense Council</u>, 467 U.S. 837, 844 (1984), the Order is "manifestly contrary to the statute" and unreasonable. The Order singles out debtors as a particular group for a lower level of privacy protection than what Congress authorized in the statute, and gives debt collectors more leeway than telemarketers with respect to calls placed to cellular telephone numbers. Congress *did* give the FCC authority to regulate the TCPA, however, on the issue of consent (which was *not* one of the subjects tasked to the Commission by the statute), the FCC has gone too far, and inappropriately contradicted Congress's specific intent that consent to automated calls must be *express*. The FCC Order holds that if a debtor merely provides his or her cellular telephone number to the original creditor that acts as express consent. This could *never* have been Congress's intention. Congress *did* make explicit provisions in the statute that protect debt collection calls made to *residential* telephone numbers – they are exempt from the statute's coverage because the calls are not commercial or solicitous in nature, and because the collector and debtor have an established business relationship. (47 U.S.C § 227 (b)(2)(B)). Congress specifically *did not* create any exceptions for calls to cellular telephones except for emergency purposes, or with prior express consent. If Congress intended for the statute to apply differently to debtors or debt collectors than to telemarketers, or if it intended some other meaning of "express consent," it would have created other exceptions, as it did for residential telephone calls. Thus the FCC Order is

3

contrary to the statute and to Congress's intent, and should not be applicable under

Chevron. The only Court to have considered the Chevron analysis in the context of a

TCPA case found that the FCC Order was inapplicable:

> In sum, the FCC's interpretation of the TCPA reads out Congress' requirement that autodialed and prerecorded calls may be made to cell phone numbers only where the called party's consent is express, and instead permits the application of this exemption where the consent can be implied. This interpretation is manifestly contrary to the plain language of the statute, is unreasonable, and therefore is not deserving of deference. Pub. Employees Rel. Sys. of Ohio v. Betts, 492 U.S. 158, 171, 109 S. Ct. 2854, 106 L. Ed. 2d 134 (1989) ("But, of course, no deference is due to agency interpretations at odds with the plain language of the statute itself."). Accordingly, as the parties do not dispute any issues of material fact, the Court finds that partial summary judgment in plaintiff's favor is appropriate because defendant violated the TCPA when it called plaintiff's cell phone using an autodialer and prerecorded messages without plaintiff's prior express consent.

Leckler v. Cashcall, Inc., 554 F. Supp. 2d 1025, 1033 (N.D. Cal. 2008)

The Leckler Court later vacated its Order, when it determined that under Ninth

Circuit precedent, a trial court did not have authority to question an FCC Order. Leckler

v. Cashcall, Inc., 2008 U.S. Dist. LEXIS 97439 (N.D. Cal. Nov. 21, 2008). The opposite,

however, is true in the Eleventh Circuit – an FCC Order is not binding, and may be

questioned at the trial court level: the Eleventh Circuit held that an FCC Declaratory

Ruling (issued in similar fashion to the 2008 TCPA Ruling) was not an "Order" subject

to Hobbs Act review, and declined to hear the case, see Miller v. FCC, 66 F.3d 1140

(11th Cir. 1995). Under the Chevron analysis, the FCC Order with respect to the issue of

consent should not be applied.

## THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT ACTS AS "INSTRUCTIONS TO THE CONTRARY"

5.     Defendants contend that they are entitled to judgment as a matter of law because Plaintiff gave his cellular number to his medical provider and that under the FCC's Declaratory Ruling, that provision acts as consent to receive automated calls. Even if the FCC Order is applicable, Defendants are wrong. The FCC's Order explicitly states that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, *absent instructions to the contrary*." In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 F.C.C.R. 559, ¶ 9 (F.C.C. 2007) (emphasis added).

6.     The Health Insurance Portability and Accountability Act constitutes such "instructions to the contrary." Under these instructions, Plaintiff's telephone number could not have been forwarded to Defendants at all, as it exceeded the scope of information that can be permissibly disclosed for the purposes of collecting a debt. At no point in time did Plaintiff waive his rights under HIPAA, nor did Plaintiff authorize his medical provider to disclose any of his protected health information, including his cellular telephone number, for the purposes of debt collection. Other Courts have agreed with this analysis: see Memorandum Opinion and Order, Mitchem v. Ill. Collection Serv., Case No. 09-cv-07274, 271 F.R.D. 617, 2011 U.S. Dist. LEXIS 714 (N.D. Ill. January 3, 2011). The Mitchem court is the only court (that Plaintiff can locate) that has considered this issue, and the Mitchem court certified a class action based upon the very same argument that Plaintiff asserts here. Plaintiff attaches the initial order in the Mitchem case, which denied the motion for certification without prejudice, because it contains an

analysis that is useful for this Court as Exhibit "C," and attaches as Exhibit "D," the subsequent order certifying the class.

7.     Health care providers issuing notices of privacy rights conforming to HIPAA standards do *not* generally inform the consumer that the telephone number they provide to it will be disclosed to a debt collector. *See e.g.* The University of Chicago Medical Center, Notice of Privacy Practices, p. 2 (May 27, 2007) (emphasis in the original) (The HIPAA Privacy Notice informs the patient that their Personal Health Information would be used and shared, "[f]or example, we may share your PHI to request payment and receive payment from Medicare, Medicare, your health insurer, HMO, or other company or program that arranges or pays the cost of some or all of your health care ("Your Payor") and to confirm that Your Payor will pay for health care. As another example, we may share your PHI with the person who you told us is primarily responsible for paying for your Treatment, such as your spouse or parent").

8.     Under HIPAA, Plaintiff had the reasonable expectation that part of his Personal Health Information, his telephone number, would not be provided to a business associate, Defendant, for payment or collection purposes. Under HIPAA, Plaintiff did not give express consent for a business associate, Defendant, to use part of his Personal Health Information, his telephone number, to contact him for payment purposes.

9.     HIPAA prohibits the disclosure of protected health information, including a patient's telephone number, for the purpose of debt collection, unless the patient waives his right to keep his information private. In this case, Plaintiff has not waived his right under HIPAA.  HIPAA allows a medical provider to disclose *only* the minimum amount

of information necessary in order to collect a medical debt. The information disclosed must be limited to the information reasonably necessary to achieve the purpose of the disclosure. Thus, for the purposes of debt collection, the minimum amount of information necessary does *not* include a patient's telephone number. Debt collectors are *required* by the Fair Debt Collection Practices Act ("FDCPA") to send consumers written notice of their intent to collect a debt; however, debt collectors do not have a right to make phone calls to collect debts.

> Debt collectors have no entitlement to use automated messages to reach debtors, and courts have no obligation to harmonize different provisions of the FDCPA so that debt collectors may use an inherently risky method of communication. See id. at 659-60 (citing Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2nd Cir. 1996)).

Berg v. Merchants Association Collection Division, Inc., d/b/a MAF Collection Services, 586 F. Supp. 2d 1336 (S.D. Fla. 2008)

10.     Debt collectors are permitted to utilize the U.S. Mail to collect debts. Debt collectors may also file collection suits to recover debts – another method which does not require a telephone number. And debt collectors may report allegedly delinquent debts to a consumer's credit report, another method that does not require the consumer's telephone number. Just because it may be more effective or lead to higher collections for a debt collector to leave pre-recorded messages on a consumer's cellular telephone regarding a debt does not mean that a telephone number is necessary or required to perform the function of debt collection. The Eleventh Circuit has addressed the issue of debt collectors leaving automated messages on answering machines, and held that debt collectors are *not* guaranteed the right to leave answering machine messages. Edwards v.

<u>Niagara Credit Solutions, Inc.</u>, 2009 U.S. App. LEXIS 22500 (11th Cir. 2009). Under HIPAA, the disclosure is meant to be a *minimum* amount, not an amount that makes collection easier. The fact that Defendants and United Radiology Westside have decided that the telephone number is a necessary disclosure is completely irrelevant – the medical provider is not permitted under HIPAA to determine at will what protected health information it will release to third parties – those disclosures are governed by statute. It is not for Defendants or Plaintiff's medical provider to contradict the statute by their own private agreement or otherwise ignore the statute.

11.     These facts are alleged in Plaintiff's Complaint (DE 1), and are taken as true for the purposes of resolving Defendants' motion. On these facts, Defendants are not entitled to judgment on the pleadings.

Respectfully submitted,

DONALD A. YARBROUGH, ESQ.
Attorney for Plaintiff
Post Office Box 11842
Fort Lauderdale, Florida 33339
Telephone: (954) 537-2000
Facsimile: (954) 566-2235
donyarbrough@mindspring.com

s/Donald A. Yarbrough
Donald A. Yarbrough, Esq.
Florida Bar No. 0158658

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 11-61936-Civ-Jordan/Brown

MARK S. MAIS,
on behalf of himself and
all others similarly situated,

      Plaintiff,

v.

GULF COAST COLLECTION BUREAU, INC., and
JACK W. BROWN, III,

      Defendants.

_____/

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that on <u>October 31, 2011</u> I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/Donald A. Yarbrough</u>
Donald A. Yarbrough, Esq.

## SERVICE LIST

Mr. Ernest H. Kohlmyer, III, Esq.
South Milhausen, P.A.
Gateway Center, Suite 1200
1000 Legion Place
Orlando, FL 32801
Telephone: 407-539-1638
Facsimile: 407-539-2679

<u>Via Notices of Electronic Filing generated by CM/ECF</u>