UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-61936-CIV-Scola/Brown

MARK S. MAIS,
On behalf of himself and all
Others similarly situated

        Plaintiff,
v.

GULF COAST COLLECTION BUREAU, INC.,
FLORIDA UNITED RADIOLOGY, L.C.,
SHERIDAN ACQUISITION ASSOCIATES, P.A.,
and JACK W. BROWN, III,

        Defendant.
_____/

### DEFENDANT, JACK W. BROWN, III'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

COMES NOW, the Defendant, JACK W. BROWN, III, (hereinafter referred to as "BROWN"), by and through his undersigned attorneys and pursuant to Rule 56, Federal Rules of Civil Procedure, and hereby files this Reply to Plaintiff's Opposition to Defendant Brown's Motion for Summary Judgment requests entry of Summary Judgment in its favor and against Plaintiff, MARK S. MAIS (hereinafter referred to as "Plaintiff"), and as grounds therefore states:

### FACTUAL ALLEGATIONS

On or about August 16, 2011, the Plaintiff re-filed his allegations under the Telephone Consumer Protection Act ("TCPA"), not only against Defendant, Gulf Coast Collection Bureau, Inc. but also against Jack W. Brown, III, individually and personally. Plaintiff's operative pleading attempts to hold BROWN personally liable under the TCPA merely based on the allegation that *"Jack W. Brown, III is vice president of and 20% owner of Gulf Coast. He is a*

1

*citizen and member of the Florida Bar of the State of Florida. He controls the policies and practices of Gulf Coast regarding the TCPA and authorized those policies and practices complained of herein"* [See Paragraph 5 of First Amended Class Action Complaint [Doc 31] filed on or about February 21, 2012].

BROWN asserts that he cannot be independently liable under the TCPA based on his officer and ownership position with Defendant GCCB under federal and Florida law, and that judgment as a matter of law is appropriate as to him as an individual in this case. Plaintiff has countered this argument that its *"this is not a matter of 'piercing the corporate veil' and holding Brown liable for the acts of the corporation just because he is an officer of the corporation- it is a matter of Brown's personal involvement in the violations complained of."* [See Dk 92, Page 2] Even if the plaintiff is correct, it is undisputed that Brown had no personal involvement in the "violations complained of" since Brown has testified by affidavit and by deposition testimony that he had no "personal involvement in the alleged conduct" an officer of the corporation. [See Affidavit of Jack W. Brown] Plaintiff cites <u>State of Texas v. American Blast Fax, Inc.</u>, 164 F. Supp.2d 892 (W.D. Texas 2001) for the proposition that such officer can still be liable for the "personal involvement in the corporation's activities." It is clear that not only is the case not binding or authoritative in any way but the cases cited are not applicable to Mr. Brown. It is undisputed in this case that Brown had no personal contact with the Plaintiff or any prospective member but, at most, authorized the use of the automatic dialing equipment within the confines of the statutory requirements. It is further undisputed that Mais voluntarily provided his cellular telephone number, as authorized by him to his spouse, to the medical center for the services rendered for which was subject to this lawsuit. *[See Depositions of Laura Mais, pages 36-45; and Mark Mais, page 26]*

The non-binding cases cited by plaintiff merely stand for the proposition that a corporate officer can be held liable if they directly participate in the wrongful act. Plaintiff has demonstrated no evidence that Brown directly participated in the wrongful conduct as alleged complaint. It is undisputed that there is nothing illegal or prohibitive on utilizing and using "predictive dialing equipment" for the purposes of debt collection so long as it is done with the restrictions imposed by the TCPA.[1] Plaintiff has failed to demonstrate any action or inaction in which Mr. Brown directly participated in to violate the TCPA which would subject him to separate and independent personal liability under this statute and to circumvent Florida laws on corporate liability protection for its officers.

WHEREFORE, Defendant, Jack W. Brown, III, respectfully requests the Court grant his Motion for Summary Judgment in its entirety.

## MEMORANDUM OF LAW

In this matter, the courts have uniformly held that "although the moving party has the burden of showing that no genuine issue of material fact exists, once it does the non-moving party, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claim and establishing the existence of a genuine issue of material fact." See: Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must also be genuine. The facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the non-moving

---

[1] Plaintiff refers to Mr. Brown's authorization to "use" the automatic dialer. The authority to use equipment that is not otherwise illegal, is not sufficient to establish separate and independent liability under Plaintiff's "direct personal involvement" argument.

party.  Id.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial.  First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

### Piercing the Corporate Veil Under Federal Common and Florida Law

Plaintiff asserts in Count I of the First Amended Class Action Complaint [Doc 31] that Defendant GCCB violated the Telephone Consumer Protection Act (TCPA) by "placing non-emergency telephone calls to Plaintiff's cellular telephone . . . using an automatic telephone dialing system or pre-recorded or artificial voice in violation of 47 U.S.C. Section 227(b)(1)(A)(iii).  Nowhere in the First Amended Class Action Complaint, does the Plaintiff assert any allegations as to BROWN's involvement therein, or state any factual allegations to support any separate or independent liability against BROWN personally under the TCPA.  The First Amended Class Action Complaint merely defines Mr. Brown in Paragraph 5 as "*vice president of and 20% owner of Gulf Coast.  He is a citizen and member of the Florida Bar of the State of Florida. He controls the policies and practices of Gulf Coast regarding the TCPA and authorized those policies and practices complained of herein.*"

It is clear and well-established that a court does have the power to pierce the corporate veil of a corporation in order to reach the "alter egos" of a corporate defendant. Swift and Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). The law to be applied is federal common law, although the court may import into its decision those principles of state law which it finds both persuasive and appropriate to subsume. Bergesen d.y. A/S v. Lindholm, 760 F.Supp. 976, 986 (D.Conn.1991); Sabine Towing & Transp. Co. v. Merit Ventures, Inc., 575 F.Supp. 1442, 1445 (E.D.Tex.1983); *See* Talen's Landing, Inc.

v. M/V Venture, 656 F.2d 1157 (5th Cir.1981).

Under federal common law, only general guidelines or rules have been developed as to when it is appropriate to pierce the corporate veil, as each case is *sui generis* and must be judged within its own context. Sabine Towing, 575 F.Supp. at 1446. The *Sabine* court stated that:

> A trial court should pierce the corporate veil and require a parent corporation to answer for the debts of a subsidiary when the subsidiary conducts business in a manner that clearly indicates that the parent is an alter ego of the subsidiary ... To find an alter ego relationship, the evidence must disclose a pattern of control or domination of a corporation, and that this domination was used to support a corporate fiction ... Once that is established, it will be appropriate to disregard a corporate entity when it appears a corporation was organized for fraudulent or illegal purposes. Furthermore, it is quite clear that the veil should be pierced when it will prevent manifest injustice to third parties.

*Id.* at 1446 (citations omitted).

There are at least fifteen factors that have been deemed to be relevant in a determination of whether a corporate entity should be disregarded: (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e. issuance of stock, election of directors, keeping of corporate records and the like; (2) inadequate capitalization; (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the amount of business discretion displayed by the allegedly dominated corporation; (7) whether the related corporations deal with the dominated corporation at arms-length; (8) whether the corporations are treated as independent profit centers; (9) the payment or guarantee of debts of the dominated corporations by other corporations in the group; (10) whether the corporation in question has been properly used by others of the corporations as if it were their own; (11) financing of subsidiary by parent; (12) informal intercorporate loan transactions; (13) parent and subsidiary's filing of consolidated income tax

returns; (14) whether subsidiary's directors act independently in interest of subsidiary rather than in interest of parent; (15) existence of fraud, wrongdoing or injustice to third parties. <u>M. Prusman, Ltd. v. Ariel Maritime Group, Inc.,</u> 781 F.Supp. 248 (S.D.N.Y.1991) citing <u>Wm. Passalacqua Builders, Inc. v. Resnick Dev. S., Inc.,</u> 933 F.2d 131, 139 (2d Cir.1991); <u>Sabine Towing</u>, 575 F.Supp. at 1446-48.

Under Florida law, the corporate veil will not be pierced absent a showing of improper conduct. <u>Dania Jai-Alai Palace, Inc. v. Sykes</u>, 450 So.2d 1114 (Fla.1984); <u>Ally v. Naim,</u> 581 So.2d 961 (Fla. 3d DCA 1991); <u>Sky Lake Gardens Recreation, Inc. v. Sky Lake Gardens</u>, 574 So.2d 1135, 1137 (Fla. 3d DCA 1991). Therefore, the corporate veil will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them. <u>Dania Jai-Alai</u>, 450 So.2d at 1120. The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally. *Id.,* quoting <u>Advertects, Inc. v. Sawyer Indus.,</u> 84 So.2d 21, 23 (Fla.1955). Nor does the fact that the corporation's business affairs have been poorly handled, without more, justify piercing the corporate veil. <u>Ally,</u> 581 So.2d at 962-963, citing <u>Advertects</u>, 84 So.2d at 24.

Based upon both federal common law and Florida law, the Court should find that there is no material issue of fact in dispute that would support piercing the corporate veil to impose personal liability against BROWN in this action.

In <u>Riley v. Fatt</u>, 47 So.2d 769, 773 (Fla.1950), the Florida Supreme Court reversed the trial court judgment which allowed a creditor to pierce the corporate veil:

> The rule is that the corporate veil will not be pierced, either at law
> or in equity, unless it be shown that the corporation was organized

> or used to mislead creditors or to perpetrate a fraud upon them....
> In the absence of pleading and proof that the corporation was organized for an illegal purpose or that its members fraudulently used the corporation as a means of evading liability with respect to a transaction that was, in truth, personal and not corporate, Fatt cannot be heard to question the corporate existence but must confide his efforts to the remedies provided by law for satisfying his judgment *from the assets of the corporation,* if any can be found. (Citations omitted, emphasis in original.)

Similarly, in <u>Gross v. Cohen</u>, 80 So.2d 360 (Fla.1955), the Supreme Court of Florida affirmed a trial court judgment refusing to pierce the corporate veil because the evidence did not show that the corporation was actually organized or used to mislead creditors or to perpetrate a fraud upon them.

In <u>Advertects, Inc. v. Sawyer Industries, Inc.</u>, 84 So.2d 21 (Fla.1955), the Florida Supreme Court of Florida rejected the proposition that a rule could be issued against individual stockholders to show cause why they should not be personally responsible for corporate debts absent a preliminary showing that the corporation is in actuality the alter ego of the stockholders, and that it was organized or after organization, was employed by the stockholders for fraudulent or misleading purposes, or in some fashion that the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholders, or that the corporate structure was not bona fide, established or, in general, that property belonging to the corporation can be traced into the hands of the stockholders.

> It isn't sufficient merely to show that the corporation exists and that there are a limited number of stockholders doing business in good faith through the corporate entity. From a procedural standpoint we hold that a showing similar to that suggested in summary above be made before the rule nisi is issued and directed against the individual stockholders. If this requirement were not made then every judgment against a corporation could be exploited as a vehicle for harassing the stockholders and entering upon fishing expeditions into their personal business and assets.

> *Id.* at 24.

In so holding the Supreme Court of Florida stated the controlling law on piercing the corporate veil and delineated why it was so:

> The corporate veil will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them.
>
> Every corporation is organized as a business organization to create a legal entity that can do business in its own right and on its own credit as distinguished from the credit and assets of its individual stockholders. The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity is a fraud or that it is necessarily the alter ego of its stockholders to the extent that the debts of the corporation should be imposed upon them personally. If this were the rule, it would completely destroy the corporate entity as a method of doing business and it would ignore the historical justification for the corporate enterprise system.

> *Id.* at 23–24.

Likewise, in Roberts' Fish Farm v. Spencer, 153 So.2d 718 (Fla.1963), the Supreme Court of Florida held that the Florida Industrial Commission did not have jurisdiction to pierce the corporate veil.

> The corporate entity is an accepted, well used and highly regarded form of organization in the economic life of our state and nation. As we said in *State ex rel. Continental Distilling Sales Co. v. Vocelle,* 1946, 158 Fla. 100, 27 So.2d 728, "Their purpose is generally to limit liability and serve a business convenience." Those who utilize the laws of this state in order to do business in the corporate form have every right to rely on the rules of law which protect them against personal liability unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing of the corporate veil. This is the reason for the rule, stated in all Florida cases, that the courts are reluctant to pierce the corporate veil and will do so only in a court of competent jurisdiction, after notice to and full opportunity to be heard by all parties, and upon showing of cause which necessitates the corporate entity being disregarded in order to prevent some injustice.

Based on the undisputed record of this case, Plaintiff should not be permitted to pierce the corporate veil to impose individual liability upon BROWN, and the Court should enter judgment in favor of BROWN as a matter of law.

### Telephone Consumer Protection Act

The Telephone Consumer Protection Act ("TCPA") clearly states there can be no violation where prior express consent is given by the called party to call his or her cell phone. 47 U.S.C. § 227(b)(1)(a). On January 4, 2008, the Federal Communications Commission issued a declaratory ruling and order declaring that "[a]lthough the TCPA generally prohibits autodialed calls to wireless phones, it also provides an exception for autodialed and prerecorded message calls for emergency purposes, *or made with the prior express consent of the called party.*" 2008 TCPA Order at ¶9, p.3. (emphasis added).

The Order continues: "[b]ecause we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with "prior express consent" of the called party, we clarify that such calls are permissible. Id. The FCC reasons: "[w]e conclude that the provision of the cell phone number to a creditor, e.g. as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." Id.

BROWN asserts Plaintiff expressly consented to being called on his cellular phone by Florida United Radiology - Westside and subsequently, Gulf Coast Collection Bureau. Plaintiff's cellular telephone number was voluntarily provided to the original creditor during the original consumer transaction. **[See Exhibit "B," Affidavit of Corporate Representative, Florida United Radiology [Doc 26-2 in "Mais I" action]** Further, the telephone number was not obtained by skip-tracing or other search or capture method. **[See Exhibit "B"; paragraphs**

9

**4, 5, and 6]**

After payment was not received by the original creditor, the account was referred for collection to Gulf Coast Collection Bureau. **[See Exhibit "C," excerpt of Deposition of Jack Brown, page 8]** On or about June 3, 2009, GCCB electronically received the account bearing the name of the Plaintiff, Mark M. Mais with the same contact cellular telephone number included on the information sheet. **[See Exhibit "C," pages 9-13]** The electronic file was uploaded into GCCB's collection software in order for GCCB to undertake collection efforts on behalf of its client. **[See Exhibit "C," page 9-13];** GCCB's dialer system then made outgoing calls to the Plaintiff at the telephone number provided by the original creditor in an attempt to recover the balance due and owing. **[See Exhibit "C," page 13]**  BROWN as vice president and shareholder of GCCB did not actively participate in the dialing of the telephone calls by GCCB to the Plaintiff.

Since the filing of the original motion for summary judgment, the plaintiff and his spouse were deposed and testified to facts that clearly demonstrates prior express consent exists under the FCC Ruling without revocation.  The Plaintiff has testified under oath that under his then existing medical condition he has no recollection of filling out any medical intake forms or providing any patient information to the medical provider.  **[Deposition of Mark Mais, page 26, lines 19-21]** As such, the Plaintiff left the responsibility of filling out the forms for the medical provider to his spouse, Laura Mais. *[***Deposition of Mark Mais, page 26, lines 22-25]** **[Deposition of Laura, page 38, lines 7-12]** Both Mr. and Mrs. Mais testified they do not have a residential land line and rely totaling the use of their cellular number for communications. **[Deposition of Mark Mais, page 33, lines 10-14]** Further, the medical services in which he sought treatment were the same for which the underlying debt obligation was created.

**[Deposition of Mark Mais, page 36-38]** Mrs. Mais testified that she provided the cellular telephone number to the hospital intake personnel at the time of treatment of Mr. Mais to which the subject debt obligation was created. **[Deposition of Laura, pages 45-53]**

As such, BROWN contends there is no genuine issue of material fact to support the allegations of separate and independent liability against BROWN under federal or Florida law merely based upon his corporate officer and/or ownership status with GCCB.  Further, it is undisputed that Plaintiff's cellular phone number was provided as a contact number by the Plaintiff to the original creditor.  As such, the undisputed facts support GCCB's subsequent good faith reliance upon the "prior express" consent defense under the TCPA.  Based on the foregoing, BROWN asserts he is entitled to judgment in his favor as a matter of law, and requests this Court dismiss Plaintiff's claims against him individually and personally under the TCPA.

## **CONCLUSION**

Based on the foregoing, BROWN respectfully requests this Court to grant his Motion for Summary Judgment as to Plaintiff's claims under 47 U.S.C. Section 227(b)(1)(A)(iii).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing has been electronically filed **October 26, 2012,** I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which Notice will be electronically mailed to DONALD A. YARBROUGH, ESQUIRE, don@donyarbrough,com, Post Office Box 11842, Fort Lauderdale, Florida 33339; EILEEN PARSONS, ESQUIRE, Ver Ploeg & Lumpkin, P.A. 30th Floor, 100 Southeast Second Street, Miami, Florida 33131, eparsons@vpl-law.com

s/ Ernest H. Kohlmyer, III
Ernest H. Kohlmyer, III, Esquire
Florida Bar No. 0110108
Urban, Thier, Federer & Chinnery, P.A.
200 S. Orange Avenue
Suite 2000
Orlando, FL  32801
Phone: (407) 245-8352
Fax: (407) 245-8361
Attorneys for Defendant, Brown