UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-61936-Civ-Scola

MARK S. MAIS et al.,

    Plaintiffs,

v.

GULF COAST COLLECTION
BUREAU, INC.,

    Defendant.

_____/

**ORDER CERTIFYING INTERLOCUTORY APPEAL OF SUMMARY JUDGMENT RULING TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT PURSUANT TO 28 U.S.C. § 1292(b)**

THIS MATTER is before the Court upon the Motion for Certification of May 8, 2013 Order Under 28 U.S.C. § 1292(b) [ECF No. 209], filed by Defendant Gulf Coast Collection Bureau, Inc. ("Gulf Coast"). Gulf Coasts seeks certification of this Court's summary judgment ruling regarding what constitutes "prior express consent" under the Telephone Consumer Protection Act ("TCPA"). Although the Plaintiff opposes interlocutory review, the Court finds good cause for certification to the Eleventh Circuit under section 1292(b).

**Background**

Under the TCPA, consent is an affirmative defense. *See Manfred v. Bennett Law*, PLLC, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012) (Seitz, J.). The TCPA makes it unlawful for any party to make a non-emergency call, using an automatic telephone dialing system or artificial prerecorded voice, to any cellular telephone number, unless the call is "made with the ***prior express consent*** of the called party[.]" *See* 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis supplied). In 2008, the Federal Communications Commission ("FCC") issued a declaratory ruling, entitled *In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559 (2008) (hereinafter, the "2008 FCC Ruling"), that interpreted the statutory phrase "prior express consent":

> Because we find that autodialed and prerecorded message calls to *wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party*, we clarify that such calls are permissible. We conclude that *the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt*. . . . We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed.

2008 FCC Ruling at 564-65 (emphasis supplied; footnotes omitted). Thus, the FCC has determined that "prior express consent" will be found whenever a person has provided his cell number to a creditor in connection with the transaction that resulted in the debt.

In denying summary judgment to Gulf Coast, the Court found that the 2008 FCC Order was not entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), because the FCC's interpretation of "prior express consent" runs contrary to the plain language of the TCPA. The Court found that the FCC had written into the statute an additional exception for "implied consent" – one that Congress did not include. The Court reasoned that while it may be sensible to presume that an individual, in providing a cell phone number on a credit application, consents to be called at that number by the creditor, such consent is "implied" through the individual's conduct – that is, his act of writing down his number on the application. He has not directly, clearly, and unmistakably stated that the creditor may call him, and so he has not given "express consent." Thus, the Court found that the FCC's construction was inconsistent with the statute's plain language because it impermissibly amends the TCPA to provide an exception for "prior express *or implied* consent."

Because Gulf Coast's consent argument was based on the 2008 FCC Ruling, the Court rejected it as contrary to the statute. Gulf Coast contended that Plaintiff consented to be called on his cell phone solely because his wife provided that number to an admissions clerk at the hospital emergency room. In other words, Gulf Coast was asking the Court to imply consent from Plaintiff's wife's conduct. Gulf Coast did not argue that Plaintiff, or his wife, expressly told the hospital that it, or any of its agents or affiliates, could call Plaintiff on his cell phone using an automatic telephone dialing system or artificial prerecorded voice for debt collection or payment purposes. Thus, the Court found "prior express consent" had not been given.

In reaching the issue of whether the 2008 FCC Ruling was entitled to deference, the Court was first required to address whether it had jurisdiction under the Hobbs Act to review an FCC order. Some district courts, in addressing claims under the TCPA, had held that they were bound by the 2008 FCC Ruling because the Hobbs Act vests the federal courts of appeals with exclusive jurisdiction to pass on the validity of the FCC's final orders. *See, e.g.*, *Frausto v. IC System, Inc.*, 2011 WL 3704249, at *2 (N.D. Aug. 22, 2011); *Leckler v. Cashcall, Inc.*, 2008 WL 5000528, at *2-*3 (N.D. Cal. Nov. 21, 2008); *Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703, at *10 n.10 (W.D.N.Y. Sept. 15, 2011). This Court, however, reached the opposite conclusion upon closely examining the language of the jurisdictional statute.

This Court observed that Congress chose to vest the federal courts of appeals with "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of," *inter alia*, "all final orders of the Federal Communications Commission made reviewable by section 402(a)" of the Hobbs Acts. *See* 28 U.S.C. § 2342(1). In turn, section 402(a) of the Hobbs Act provides that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission" must be brought "as provided by and in the manner prescribed in" 28 U.S.C. § 2342, noted above. *See* 47 U.S.C. § 402(a). Thus, the federal courts of appeals have exclusive jurisdiction to determine the validity of FCC orders "***made reviewable by section 402(a)***" of the Hobbs Act. *See* 28 U.S.C. § 2342(1) (emphasis supplied). The Court observed that the key phrase of this provision is "made reviewable by section 402(a)." *See id.* Section 402(a) makes reviewable "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission[.]" *See* 47 U.S.C. § 402(a). Accordingly, the Court found that under the plain statutory language, any action that is not a proceeding "to enjoin, set aside, annul, or suspend" an FCC order necessarily falls outside the jurisdictional provision's reach.

In this case, the Court concluded that the Plaintiff had not filed a proceeding "to enjoin, set aside, annul, or suspend any order of the Commission" because this action seeks damages for debt collection calls that violate the TCPA. The Court noted that this lawsuit's central purpose is not "to enjoin, set aside, annul, or suspend" an FCC order, and that the Plaintiff did not even argue that the 2008 FCC Ruling was invalid, incorrect, or unworthy of deference. Moreover, the Court recognized that the 2008 FCC Ruling pertains to Gulf Coast's affirmative defense of consent, not to any element of the Plaintiff's claims. Thus, while other courts, in other TCPA cases, had construed the jurisdictional provision as barring review, this Court found those decisions distinguishable because those courts were either confronted with a party asking them to

ignore or invalid an FCC order or they failed to consider the significance of the key phrase, "made reviewable by section 402(a)," to the jurisdictional analysis. *See, e.g.*, *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, (7th Cir. 2010); *Sacco v. Bank of Am., N.A.*, 2012 WL 6566681, at *9 (W.D.N.C. Dec. 17, 2012); *Greene v. DirecTv, Inc.*, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010); *Hicks v. Client Servs., Inc.*, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (Dimitrouleas, J.); *Leckler*, 2008 WL 5000528, at *2-*3; *Frausto*, 2011 WL 3704249, at *2.

The Court observed that there was no Eleventh Circuit decision directly addressing whether the Hobbs Act bars review in this context, but that the most relevant decision appeared to be *Self v. Bellsouth Mobility, Inc.*, 700 F.3d 453 (11th Cir. 2012). This Court felt that its interpretation of the Hobbs Act could be squared with the *Self* decision because here, unlike there, the Plaintiff's claims did not "**necessarily conflict with** final orders of the FCC and thereby depend on the district court being able to collaterally review the correctness or validity of those orders[.]" *See id.* at 462 (emphasis supplied). The Court reasoned that the Plaintiff's claims did not necessarily hinge on invalidation of the 2008 FCC Ruling and noted that the Plaintiff had not even argued that the ruling was invalid. Thus, the Court held that the Hobbs Act did not prevent it from considering whether the 2008 FCC Ruling should be accorded deference under *Chevron*.

The Court alternatively ruled that the 2008 FCC Ruling, even if entitled to deference, was applicable only to consumer credit transactions, not to the medical care context. Alternatively still, the Court ruled that even if the 2008 FCC Ruling was applicable to such transactions, it did not control here because consent was given to the hospital, not to Florida United, which is the relevant creditor in this case. In the course of making these rulings, the Court rejected a number of arguments from Gulf Coast and the other defendants, particularly as to the application and effect of consent under the Health Insurance Portability and Accountability Act ("HIPAA").

After rejecting Gulf Coast's argument that the Plaintiff had consented to be called, the Court next turned to the issue of vicarious liability under the TCPA. Florida United Radiology, L.C. ("Florida United") and Sheridan Acquisition Associates, P.A. ("Sheridan"), were also defendants in the case. Florida United is a hospital-based provider that performs clinical services on behalf of hospital facilities and the entity to which Plaintiff's debt was owed. Sheridan Acquisition, P.A. ("Sheridan") is a holding company for Florida United. The two entities are separately run and operated; Sheridan's involvement is solely one of ownership.

After being admitted to the hospital, the Plaintiff received treatment from Florida United, incurring a medical debt in the amount of $49.03. Sheridan and Florida United sought summary judgment, arguing that they could not be held liable for Gulf Coast's calls under the TCPA, section 227(b)(1)(A). They pointed out that section 227(b)(1)(A), by its plain language, makes it unlawful for anyone "to *make* any call," without consent, to a cell phone, using an automatic telephone dialing system or an artificial or prerecorded voice, whereas section 227(c)(5), which concerns violations of the "Do Not Call" Registry, imposes liability for multiple calls made "by *or on behalf of*" a party. *Compare* 47 U.S.C. § 227(b)(1)(A) (emphasis supplied), *with* 47 U.S.C. § 227(c)(5) (emphasis supplied). According to Sheridan and Florida United, the choice and placement of language in the different statutory provisions indicated that Congress intended to allow for "on behalf of," or vicarious, liability in section 227(c)(5), but not in section 227(b)(1)(A). The Court agreed, noting that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983); *United States v. Gonzales*, 520 U.S. 1, 5 (1997).

In reaching this ruling, the Court once again had to contend with a portion of the 2008 FCC Ruling. The FCC had declared that "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *See* 2008 FCC Ruling at 565. In other words, the FCC had decided that there should be vicarious liability in cases like this. Again confronting the Hobbs Act, the Court stated:

> The Court has already found that the Hobbs Act presents no bar to review of the 2008 FCC Ruling because this is not a proceeding "to enjoin, set aside, annul, or suspend" an FCC order under the plain language of section 402(a). By virtue of the fact that the plaintiff initiates the case, the plaintiff necessarily controls the nature of the proceeding. Consistent with this truism, the Eleventh Circuit in *Self*, discussed earlier, applied the Hobbs Act to a plaintiff's claim and found that the district court did not have jurisdiction. Implicitly, then, the Eleventh Circuit must have found that the proceeding was one "to enjoin, set aside, annul, or suspend" an FCC order under section 402(a). The Court has already noted that this is not such a case, and a defendant's argument cannot change the nature of the proceeding from what it already is. So, the Hobbs Act does not divest this Court of jurisdiction to rule on the Defendants' argument that they cannot be held vicariously liable under the TCPA, notwithstanding the 2008 FCC Ruling.

Accordingly, this Court went on to decide whether the 2008 FCC Ruling was entitled to deference on the issue of various liability under section 227(b)(1)(A). The Court observed that with respect to section 227(b)(1)(A), the FCC had chosen to provide for vicarious liability where

Congress did not. Rather than defer, then, the Court found that it should employ the statute as written such that only those who make calls in violation of section 227(b)(1)(A) may be held liable. Because neither Sheridan nor Florida United made any calls to the Plaintiff, the Court found that they were entitled to summary judgment.

Alternatively, even if traditional tort rules of vicarious liability applied, the Court ruled that Sheridan and Florida United could not be held liable as a matter of law. The Court found that under the undisputed evidence in the case, Sheridan and Florida United did not control the relevant aspects of Gulf Coast's conduct or procedures, and, accordingly, could not be held vicariously liable under Florida law.

Lastly, the Court found that Plaintiff was entitled to partial summary judgment, noting that his arguments were largely the mirror image of the defendants' contentions as to "prior express consent" and vicarious liability. On the issue of damages, the undisputed evidence showed that Gulf Coast placed 15 calls to the Plaintiff's cell phone in violation of the statute and that Plaintiff was entitled to $500 for each of those calls. At the Plaintiff's request, the Court left for trial the issue of whether Gulf Coast's violations were willful under the statute. *See Pollack v. Bay Area Credit Serv., LLC*, 2009 WL 2475167, at *11 (S.D. Fla. Aug. 13, 2009) (Dimitrouleas, J.) (stating that whether TCPA violations are knowing or willful is a jury question). Also at Plaintiff's request, the Court enjoined Gulf Coast from placing any more calls to Plaintiff's cell number in violation of the TCPA, section 227(b)(1)(A)(iii).

After the Court issued its summary judgment order, Gulf Coast moved for reconsideration. The Court denied that motion, however, because the majority of the arguments Gulf Coast presented were considered and rejected by the Court the first time around, and as for the ones not presented before, the Court was not willing to relieve Gulf Coast of the consequences of its original, limited presentation by considering them belatedly. Recognizing that its summary judgment order significantly changed the landscape of the case, the Court denied the Plaintiff's pending class certification motion without prejudice, and directed the parties to file legal memoranda addressing whether a class certification motion may be entertained after the named plaintiff has obtained partial summary judgment in his favor. After receiving the parties' submissions and conducting its own research, the Court found that the case could proceed as a class action and set a briefing scheduling. That same day, Gulf Coast filed the instant motion requesting interlocutory certification pursuant to section 1292(b).

**Legal Standard**

Federal district courts, like this one, are given "circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable" under 28 U.S.C. § 1292(b). *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 46 (1995). In relevant part, section 1292(b) provides that certification is appropriate where the district judge is "of the opinion that [an interlocutory] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" *See* 28 U.S.C. § 1292(b).

Under the statute, then, the district court may exercise its discretion to certify an interlocutory order to the court of appeals only if: 1) the ruling involves a "controlling question of law"; 2) there is "substantial ground for difference of opinion" as to the ruling; and 3) an immediate appeal will likely "material advance" the case towards its end. *See Simpson v. Carolina Builders Corp.*, 222 F. App'x 924, 925 (11th Cir. 2007); *see also* 28 U.S.C. § 1292(b).

An interlocutory order involves a "controlling question of law" when it concerns "the meaning of a statutory or constitutional provision, regulation, or common law doctrine," or "an abstract legal issue" that "the court of appeals 'can decide quickly and cleanly without having to study the record.'" *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676-77 (7th Cir. 2000)). There is "substantial ground for difference of opinion" when the district court and other courts, and particularly the court of appeals, are not "in 'complete and unequivocal' agreement" as to the resolution of the controlling legal question. *See McFarlin*, 381 F.3d at 1258 (quoting *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 970 F.2d 785, 788-89 (11th Cir. 1992)). An immediate appeal can be said to "materially advance" the case when "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *See McFarlin*, 381 F.3d at 1259.

Thus, to qualify for certification under 1292(b), there must be a pure legal issue "stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and [to] give it general relevance to other cases in the same area of law," and "the answer to that question must substantially reduce the amount of litigation left in the case." *See id.* "The antithesis of a proper [section] 1292(b) appeal is one that turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *See id.*

## Legal Analysis

For the reasons set forth below, this Court finds that its summary judgment ruling qualifies for certification under section 1292(b).

First, the "controlling question of law" requirement is met because the key issues presented are whether this Court properly found jurisdiction under the Hobbs Act to review the 2008 FCC Ruling and, if so, whether the FCC's pronouncements on consent and vicarious liability are entitled to deference. These questions are presented at "a high enough level of abstraction" and will have "general relevance to other cases in the same area of law." *See McFarlin*, 381 F.3d at 1259. They are not fact-bound questions; the facts in this case are straightforward and largely undisputed: Plaintiff went to the hospital emergency room, his wife filled out admissions paperwork on his behalf and tendered his cell phone number to the admissions clerk, Plaintiff received treatment from Florida United, he failed to pay a $49 bill, his account was forwarded to Gulf Coast for collection, and he received 15 automated debt collection calls from Gulf Coast on his cell phone. The only things in dispute are the legal implications of these facts, particularly with respect to consent and vicarious liability.

Second, the "substantial ground for difference of opinion" requirement is satisfied because other courts, including the Seventh Circuit, have ruled that district courts lack jurisdiction under the Hobbs Act to review the FCC's orders in cases of this kind. *See, e.g.*, *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, (7th Cir. 2010); *Sacco v. Bank of Am., N.A.*, 2012 WL 6566681, at *9 (W.D.N.C. Dec. 17, 2012); *Greene v. DirecTv, Inc.*, 2010 WL 4628734, at *3 (N.D. Ill. Nov. 8, 2010); *Hicks v. Client Servs., Inc.*, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (Dimitrouleas, J.); *Frausto v. IC Sys.*, 2011 WL 3704249, at *2 (N.D. Aug. 22, 2011); *Leckler v. Cashcall, Inc.*, 2008 WL 5000528, at *2-*3 (N.D. Cal. Nov. 21, 2008); *Moore v. Firstsource Adv., LLC*, 2011 WL 4345703, at *10 (W.D.N.Y. Sept. 15, 2011).

This Court explained in its summary judgment order that it disagrees with those decisions and does not find them persuasive in light of the statutory language. But their existence shows a "substantial ground for difference of opinion" because different courts have decided the relevant legal issues differently. *See In re Pac. Forest Prods. Corp.*, 335 B.R. 910, 922 (S.D. Fla. 2005) (Gold, J.) ("substantial difference of opinion" element may be satisfied where "at least two courts interpret the relevant legal principle differently"). Further, while the Eleventh Circuit has not addressed the reach of the Hobbs Act in a TCPA case, it concededly employed a broad interpretation of the jurisdictional statute in the *Self* case. While this Court believes it properly

interpreted the Hobbs Act and that its interpretation is consistent with *Self*, the Court also recognizes that the Eleventh Circuit might reach a different conclusion.

The Court also notes that this is an important area of the law, especially after *Mims v. Arrow Financial Services*, LLC, 132 S. Ct. 740 (2012), which opened the federal courthouse doors to TCPA lawsuits. Thus, a decision by the Eleventh Circuit on the reach of the Hobbs Act, the meaning of consent under the TCPA, and the extent to which the statute contemplates vicarious liability will likely have application to a great number of cases going forward and will lessen the uncertainty presently in the law.

Third, an interlocutory appeal clearly has the potential to "materially advance" this case towards its conclusion. This case is ready for class certification briefing. From a judicial and litigant economy standpoint, however, there is no sense in requiring the parties to move ahead with class certification briefing until the Eleventh Circuit has an opportunity to decide if this Court properly decided summary judgment, because the legal issues decided on summary judgment will likely have implications for class certification. Moreover, if this Court was wrong as to the legal questions at issue, then Gulf Coast will likely be entitled to summary judgment, bringing the entire case to a halt. An interlocutory decision in this case also has the potential to materially advance future cases and to conserve judicial and party resources involved with the continued litigation of these very issues going forward.

## Conclusion

For the reasons set forth above, the Court finds that its May 8, 2013 summary judgment order [ECF No. 198] qualifies for interlocutory review under section 1292(b). Accordingly, it is hereby **ORDERED and ADJUDGED** that Gulf Coast's Motion for Certification of May 8, 2013 Order Under 28 U.S.C. § 1292(b) [ECF No. 209] is **GRANTED**. This Court certifies the following controlling questions of law to the United States Court of Appeals for the Eleventh Circuit:

1) Whether a district court has jurisdiction under the Hobbs Act to review an FCC order in a TCPA case when the plaintiff does not challenge the validity of that order;

2) If the district court has such jurisdiction, whether the FCC's pronouncements on the issues of "prior express consent" and vicarious liability are entitled to deference under *Chevron*;

3) If the district court lacks such jurisdiction, whether the FCC's opinion on "prior express consent" is limited to the consumer credit transaction arena such that it does not apply to the medical care setting; and

> 4) Whether a medical provider's consent to use and disclose patient information, including phone numbers, under HIPAA equates to "prior express consent" for affiliates and agents of that provider to call the patient on his cell phone for debt collection purposes using an automated telephone dialing system.

While this Court has exercised its authority to certify the questions above, ultimately "the court of appeals must decide in its discretion [whether] to exercise interlocutory review." *See McFarlin*, 381 F.3d at 1253. Further, "the scope of appellate review is not limited to the precise question certified by the district court because the district court's order, not the certified question, is brought before the court." *See Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 40 F.3d 1202, 1207 (11th Cir. 1994). Thus, the Eleventh Circuit may choose to reformulate the certified questions, if it decides to accept review.

Gulf Coast has **10 days from the date of this Order** to apply to the Eleventh Circuit for permission to appeal. *See* 28 U.S.C. § 1292(b). Because it would waste time and money to require the parties to litigate class certification while the appeal is pending, the Court exercises its discretion to **STAY** this case. The Clerk is therefore directed to administratively **CLOSE** the case until further notice. The parties shall jointly file a status report **every 30 days** informing the Court of what's going on with the appeal. Once the Eleventh Circuit either decides the appeal or rejects Gulf Coast's request for permission to appeal, the parties shall promptly notify the Court so that the stay may be lifted.

**DONE and ORDERED** in chambers at Miami, Florida on June 10, 2013.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**